David A. Randall (SBN 156722)
dave@orbitip.com
Ehab M. Samuel (SBN 228296)
esamuel@orbitip.com
Paul G. Novak (SBN 261388)
paul@orbitip.com
ORBIT IP, LLP
11400 W. Olympic Blvd., Suite 200
Los Angeles, CA 90064
Tel.:  (310) 887-1333
Fax:  (310) 887-1334

Attorneys Defendant
SUN LEE, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| TTM INTERNATIONAL, INC.<br><br>            Plaintiff,<br><br>v.<br><br>SUN LEE INC.<br><br>            Defendant. | Case No. 2:24-cv-06846-JWH-AJR<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANT SUN LEE, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Honorable John W. Holcomb<br>Ctrm:  9D, Ninth Floor, Ronald Reagan Federal Building and U.S. Courthouse, 411 W. 4th Street, Santa Ana, California 92701<br><br>Hearing Date: December 6, 2024<br>Hearing Time: 9:00 a.m.<br><br>Complaint Filed:  August 13, 2024<br>Trial Date:  N/A |

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................. i

TABLE OF AUTHORITIES ...................................................................... iii

I.    INTRODUCTION ................................................................................1

II.   BACKGROUND ..................................................................................3

    A.    TTM's Asserted Trademarks ....................................................3

    B.    Sun Lee's Use of "Lá Bồ Đề" And a Bodhi Leaf on Its
        Vegetarian Noodle And Soybean Sauces................................5

    C.    Additional Facts of Which the Court May Take Judicial Notice..........7

        1.    The Undisclosed Trademark Litigation Between MSJ
            Foods And Binh Tay Over Use Of "Lá Bồ Đề" And Bodhi
            Leaves ........................................................................ 7

        2.    Binh Tay's Abandoned U.S. Trademark Application No.
            85815296 (the '296 Application")........................................... 10

        3.    The Prosecution of Binh Tay's U.S. Trademark
            Application No. 86427451, now the '762 Registration........... 13

III.  ARGUMENT....................................................................................14

A.    Legal Standard for Motions to Dismiss ..............................................14

B.    TTM's First Through Sixth Claims for Relief Are Not

Sufficiently Pled ....................................................................................15

    1.    TTM's Federal Trademark Infringement Claim Fails

Because It Has Not Plausibly Pled Likelihood of

Confusion. ................................................................................ 15

    2.    TTM Fails to State Claims for Federal Unfair Competition,

Common Law Trademark Infringement Or Unfair

Competition Under State Law Because It Has Not

Plausibly Alleged A Likelihood of Confusion. ....................... 21

    3.    TTM Fails to State a Claim for Dilution Under State Or

Federal Law Because It Has Not Plausibly Alleged That It

Has Rights In a Famous Mark. .................................................. 23

IV.    CONCLUSION ..............................................................................................25

1

# TABLE OF AUTHORITIES

2

3

## Cases

4

*ACI, Inc. v. Addidas-Salomon, AG*, 359 F. Supp. 2d 918 (C.D. Cal. 2005)..............24

*Aliign Activation Wear, LLC v. Lululemon Athletica Canada, Inc.*, 2022 U.S. App.

    LEXIS 22076, 2022 WL 3210698 (9th Cir. Aug. 9, 2022)............................21

*Arcsoft, Inc. v. Cyberlink Corp.*,

    153 F. Supp. 3d 1057 (N.D. Cal. 2015)................................................23, 24, 25

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................14, 15

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)........................................14, 15

*Blumenthal Distrib., Inc. v. Herman Miller, Inc.*,

    963 F.3d 859 (9th Cir. 2020) ............................................................................24

*Brookfield Commc'ns, Inc. v. West Coast Ent. Corp.*,

    174 F.3d 1036 (9th Cir. 1999) .........................................................................22

*Cairns v. Franklin Mint Co.*, 292 F.3d 1139 (9th Cir. 2002) ................................23

*Century 21 Real Est. Corp. v. Sandlin*, 846 F.2d 1175 (9th Cir. 1988)....................21

*Cohn v. Petsmart, Inc.*, 281 F.3d 837 (9th Cir. 2002) ................................................21

*Cove USA LLC v. No Bad Days Enters., Inc.*, No. 8:20-cv-02314-JLS-KES, 2022

    U.S. Dist. LEXIS 26030 (S.D. Cal. Jan. 5, 2022) ..........................................17

*Daniel's Props. v. VIP Prods LLC*, 599 U.S. 140 (2023)........................................17

*Dena Corp. v. Belvedere Int'l,* 950 F.2d 1555 (Fed. Cir. 1991)................................16

*Durning v. First Boston Corp.*, 815 F.2d 1265 (9th Cir. 1987)................................15

*In re Franklin Press, Inc.*, 597 F.2d 270, (CCPA 1979) ........................................... 16

*Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628 (9th Cir. 2008) ............................ 22, 23

*Kendall Jackson Winery, Ltd. v. E. & J. Gallo Winery*,

    150 F.3d 1042 (9th Cir. 1998) ........................................................................ 17

*Leadsinger, Inc., v. BMG Music Pub'g.*, 512 F. 3d 522 (9th Cir. 2008) .................. 23

*Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*,

    633 F.3d 1158 (9th Cir. 2011) ........................................................................ 23

*LTTB, LLC v. Redbubble, Inc.*, 385 F. Supp. 3d 916 (N.D. Cal. 2019),

    aff'd, 840 Fed. Appx 148 (9th Cir. 2021) ........................................................ 17

*Matal v. Tam*, 582 U.S. 218 (2017) ........................................................................ 21

*Mullis v. United States Bankruptcy Ct.*, 828 F.2d 1385 (9th Cir. 1987) ................... 14

*Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002 (9th Cir. 2004).......... 25

*Perfumebay.com v. eBay, Inc.*, 506 F.3d 1165 (9th Cir. 2007) ................................ 24

*Pinterest, Inc. v. Pintrips, Inc.*, 140 F. Supp. 3d 997 (N.D. Cal. 2015) ................... 24

*Reardon LLC v. Reardon Commerce, Inc.*, 683 F. 3d 1190 (9th Cir. 2012) ............. 22

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001) ..................... 14, 15

*Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293 (9th Cir. 1998).............................. 15

**Statutes**

15 U.S.C. § 1114....................................................................................... 1, 22

15 U.S.C. § 1115(b) ......................................................................................... 23

15 U.S.C. § 1115(b)(4)..................................................................................... 23

15 U.S.C. § 1125(c) ........................................................................................... 2

15 U.S.C. § 1125(c)(2)................................................24

15 U.S.C. § 1125(c)(3)(A)..........................................23

**Other Authorities**

Thomas McCarthy, McCarthy on Trademarks and Unfair Competition

§ 23:47 (4th ed. 1997)...........................................21

McCarthy on Trademarks and Unfair Competition, § 36 (4th Ed. 1997)..................17

Trademark Manual of Examination Procedure § 1213 (2024)..................16

## I.    INTRODUCTION

Defendant Sun Lee, Inc. ("Sun Lee") moves to dismiss the First Amended Complaint ("FAC") of Plaintiff TTM International, Inc. (TTM) because each of its first through sixth claims for relief fails to state a claim upon which relief may be granted. Moreover, because amendment would be futile, Sun Lee requests this court deny TTM leave to amend.

After Sun Lee moved to dismiss TTM's original complaint, TTM filed the FAC, which substituted U.S. Trademark Registration No. 2,850,888 ("the 888 Registration") for U.S. Trademark Registration No. 1,859,867 ("the '867 Registration") asserted in the original complaint. But TTM's claims for relief still are not plausibly pled. Fundamentally, TTM cannot plausibly plead likelihood of confusion between Sun Lee's accused products and the asserted Bodhi leaf logo marks. Nor can TTM plausibly plead that the asserted Bodhi leaf logo marks are famous. TTM's inability to plausibly plead a likelihood of confusion is fatal to TTM's first, second, fourth and fifth claims for relief for (1) federal trademark infringement under 15 U.S.C. § 1114, (2) federal unfair competition under 15 U.S.C. § 1125(a), (3) state unfair and deceptive trade practices under thirteen separate state statutes, and (4) common law trademark infringement and unfair competition, respectively. TTM's inability to plausibly plead that its Bodhi leaf logo marks are famous is fatal to its federal and state dilution claims set forth in its third and sixth claims for relief.

At the heart of its complaint, Plaintiff TTM alleges that Defendant Sun Lee is infringing U.S. Trademark Registration Nos. 4,751,762 ("the '762 Registration")

and the '888 Registration. But the logo leaf marks at issue in the '762 and '888 Registrations were previously asserted by opposing parties in a litigation, and the parties settled on the premise that the Bodhi leaf logo in the '762 Registration does not infringe or create a likelihood of confusion with the Bodhi leaf logo in the '888 Registration and vice versa. This ultimately precludes a finding that the accused Sun Lee products are likely to cause confusion with the asserted marks as a matter of law.

There was no likelihood of confusion between the marks in the '888 and '762 Registrations because LÁ BÔ DÊ provides no trademark significance. It means the food is vegetarian. The English translation of LÁ BÔ DÊ is "Leaf of the Buddha Tree." As stated in a declaration of TTM's counsel, Dale Washington, to the United States Patent and Trademark Office, "LÁ BÔ DÊ appearing in the mark means or signifies or is a term of art for vegetarian tradition in the relevant trade or industry or as applied to the goods/services listed in the application" and thus forms no source identifying part of the '762 mark. And just as there was no likelihood of confusion between the Bodhi leaf logos of the '762 Registration and '888 Registration, despite both logos including as a predominant feature LÁ BÔ DÊ, there is no likelihood of confusion between the asserted marks and the labels on the accused Sun Lee products.

With respect to TTM's third claim of relief for federal dilution under 15 U.S.C. § 1125(c) and sixth claim for relief for state dilution under thirty-five separate state statutes, TTM did not plausibly plead niche fame, much less that the

Bodhi leaf logos have the fame necessary to be household names as is required to assert a successful dilution claim.

Finally, because TTM cannot plausibly allege likelihood of confusion or a famous mark (indeed TTM filed its FAC but made no changes in this regard), the Court should grant Sun Lee's motion without leave to amend.

## II.    BACKGROUND

### A.    TTM's Asserted Trademarks

According to the USPTO's records, the '762 Registration is owned by Cong Ty Co Phan Thuc Pham Binh Tay AKA Binh Tay Food Company, Inc. "Binh Tay". (Dkt. 20-1 at 11 of 16.) The FAC, however, alleges that "TTM became the US exclusive importer and distributor for Binh Tay in 2017 and was assigned all rights in It's brands and trademarks as part of the distribution agreement." (Dkt. 20, ¶ 1).

As shown below, the '762 registration is for the phrase "Lá Bồ-Đề" used in conjunction with certain Chinese characters and a generic, four Bodhi leaf design. (*Id.*) This registration is specifically for "Instant noodles; Noodles; Noodles and seasoning mixes combined in, unitary packages; Pasta for soups." (*Id.*)



(*Id.*)

1    The asserted '888 Registration was filed on November 15, 2002, and issued

2  June 22, 2004. (Declaration of David A. Randall ("Randall Decl."), Ex. 8 ('888

3  Registration).) The face of the'888 Registration states that it was owned by To,

4  Phong Chan (UNITED STATES CITIZEN), DBA Chan Phong Food Co. ("Chan

5  Phong") at the time of issuance. (*Id.*) The USPTO records also show that Chan

6  Phong owned the prior '867 Registration that TTM asserted in its original Complaint

7  for the same Bodhi logo as in the '888 Registration. (*See* Dkt. 1-1 at 10 of 17; *see*

8  *also* Randall Decl., Ex. 1 (file history for '867 Registration) at "Current Owner(s)

9  Information" on p. 3 of 5.)  The FAC alleges that in July of 2024, the '888

10  Registration was assigned by an entity referred to as MSJ to TTM. (Dkt. 20, ¶¶ 2,

11  43, 46). A document that purports to be an assignment dated July 12, 2024, from

12  MSJ Foods, Inc. ("MSJ") to TTM was recorded with the USPTO on July 25, 2024

13  (Randall Decl., Ex. 14), just before this action was filed on August 12, 2024 (Dkt.

14  1).

15    The '867 Registration asserted in the original Complaint was for "soy sauce"

16  and was cancelled in 2001. (*Id.* at 2 of 5.) TTM filed its FAC because the asserted

17  '867 Registration was cancelled. The mark in the '888 and '867 Registrations is

18  shown below.



(Randall Decl. Ex. 8; Ex. 1 at 5 of 5.)

As illustrated, the logo mark of the '888 Registration contains the phrase Lá Bồ Đề in a banner below a single Bodhi leaf design in which the silhouette of the Bodhi leaf appears within a fan shaped border. Further, the silhouette of the Bodhi leaf extends at approximately a 45-degree angle from left to right. The '888 Registration is for "soy sauce, soybean paste, whole soybean sauce." (Randall Decl., Ex. 8.)

The picture of a tender Bồ Đề  (or Bodhi) branch and leaves in the asserted registrations refers to the species of tree under which the Buddha became enlightened. (Dkt. 20, ¶ 1.)

**B.    Sun Lee's Use of "Lá Bồ Đề" And a Bodhi Leaf on Its Vegetarian Noodle And Soybean Sauces**

Defendant Sun Lee is a leading importer and distributor of Asian food products in the United States. Recently, it began selling a series of vegetarian products bearing labels that included the phrase Lá Bồ Đề and a stylized green Bodhi leaf.  TTM alleges that in 2024 it observed Sun Lee using Lá Bồ Đề marks on dry noodle and soybean sauces in Asian markets. (Dkt. 20, ¶ 3.) According to TTM, Sun Lee is manufacturing, producing, marketing, distributing, offering for sale and selling in interstate commerce Asian noodles and soybean sauces bearing trademarks, including Lá Bồ Đề together with a Bodhi leaf or leaves, that TTM alleges are confusingly similar to its Lá Bồ Đề logo marks. (*Id.* ¶ 28.) Three of the accused Sun Lee products are shown in Exhibit 4 to the FAC. (Dkt 20-1 at 13 of 16.)

1  Images that more clearly show the four accused Sun Lee Lá Bồ Đề products are

2  shown in Exhibits 2 to 5 of the Randall Declaration and reproduced below. [1]

3



---

[1] Sun Lee also identified Sunlee Fermented Soybean in Soy Sauce product in its August 6, 2024, cease and desist letter attached to the FAC, but that product does not include Lá Bồ Đề or a Bodhi deaf design. (Dkt 20-1 at 16 of 16.)  Thus, that product does not infringe or dilute any trademark rights of TTM.




## C.    Additional Facts of Which the Court May Take Judicial Notice

### 1.    The Undisclosed Trademark Litigation Between MSJ Foods And Binh Tay Over Use Of "Lá Bồ Đề" And Bodhi Leaves

On October 14, 2010, Mai A. Nguyen, an individual, and MSJ sued Binh Tay Food Company in this district for trademark infringement and unfair competition, alleging that Binh Tay infringed the '867 registration and the '888 Registration (hereinafter "the MSJ Action"). (Randall Decl., Ex. 6 (Nguyen Complaint in Case No. 8:10-cv-01558-CJC); *Id.* at Ex. 7 (Notice of Action Involving a Trademark referencing '888 Registration).) Binh Tay's accused mark corresponds to the mark that eventually registered in the '762 Registration. (*See* Randall Decl., Ex. 9 at 8 of 9.)

1   In response to the MSJ Complaint, Binh Tay denied infringement and filed a

2   counterclaim asserting it had senior common law rights in its accused Lá Bồ Đề

3   mark including leaves. On April 11, 2011, Binh Tay filed a settlement statement,

4   signed by TTM's current counsel, Dale Washington. (Randall Decl. Ex. 9.) Binh

5   Tay explained that MSJ's registration was limited to "soy sauce, soybean paste,

6   whole soybean sauce" which presents no chance of confusion with Binh Tay's

7   instant noodle products. (*Id.* at 2:19-21.) Binh Tay also stated:

> Plaintiff's total income from all products is only $5,000 or so per year -
> in other words, the soy paste is a very small product. Defendant's noodle
> exports to the USA are also a very low margin product - sales are under
> $100,000 per year, and profit perhaps 10%.

(*Id.* at 3:5-8.)

12  Binh Tay also filed a trial brief.  (Randall Decl., Ex. 10.) In that brief, Binh

13  Tay asserted that Lá Bồ Đề and the Bodhi leaf are symbols that are commonly used

14  in the marketplace to indicate that food products are vegetarian. (*Id.* at 2:1-9.) Binh

15  Tay also asserted that MSJ had procured the now asserted '888 Registration by

16  fraud. (*Id.* at 2:13 to 4:8.) Specifically, Binh Tay explained that the trademark

17  examiner issued an office action finding MSJ's Lá Bồ Đề trademark confusingly

18  similar to a registered mark which used "Vi Dai Bo De" and a leaf design. To

19  overcome the rejection, MSJ submitted a false translation of "VI DAI BO DE" as

20  "seasoning extracted from the mulberry tree" and argued that this was a different

21  meaning from "Lá Bồ Đề," which means "Leaf of the Buddha Tree," and therefore

22  is not likely to be confusing to Vietnamese speakers. (*Id.*) Mr. Washington and Binh

1  Tay also argued that the phrase "Lá Bồ Đề" was a religious phrase not entitled to

2  protection when standing alone.

3       In this case "Lá Bồ Đề" on its own translates "leaf of the Bodhi tree" and

4       is a religious phrase like "rosary beads" which standing alone is not

5       entitled to protection. [Binh Tay] has always used the mark with the

6       bright green Bodhi leaves on striking yellow background and in this way

7       has achieved sufficient recognition to be knocked off [by MSJ] as shown

8       by Exhibit 8.

9  (*Id.* at 8 of 28, lns. 1-6.)

10       After MSJ and Binh Tay filed trial briefs in the MSJ Action, they settled.

11  (Randall Decl., Ex. 11.) According to the parties' Settlement Agreement, MSJ and

12  Binh Tay (the plaintiff and defendant in the MSJ Action, respectively) agreed, in

13  relevant part:

14  1.  No Admission: Both parties deny the acts, omissions and wrongdoing charged and counter charged.

15  2.  Defendant shall pay $10,000 in one lump sum payable to Plaintiff by cashiers check made out to Hoa Phu Truong client trust account.

16  3.  Plaintiff shall dismiss the complaint and file a notice of settlement with the Court; In case there remains a Defendant cross-claim, it shall also be dismissed.

17  4.  Defendant may register LaBode as set forth on its instant noodle pack – two green leafs on a distinctive branch with yellow background as is currently being copied by competitors to

18  Defendant.  This registration will only be for Binh Tay food products (noodles, eggrolls, dumplings and porridge) and not any sauce or soy paste.  Plaintiff agrees not to object to said registration.

19

20  (Randall Decl., Ex. 12 at p. 68.) In addition to being signed by the parties, this

21  agreement was also signed by Dale Washington, TTM's current counsel, and, as

22  discussed more fully below, Binh Tay filed the Settlement Agreement with the

23  USPTO to obtain the asserted '762 Registration.  (*Id.* at 59 and 68 of 68.)

24

Thus, according to Binh Tay and TTM's counsel, Dale Washington, there is no likelihood of confusion between MSJ's trademark shown above and in the '867 and '888 Registrations and the Binh Tay mark reflected in the '762 Registration.

### 2. Binh Tay's Abandoned U.S. Trademark Application No. 85815296 (the '296 Application")

USPTO records show that on January 4, 2013, after the MSJ Action settled, Binh Tay applied to register a trademark described as "Lá Bồ Đề Green Leaves on Yellow Background" for "Soups and preparations for making soups." (Randall Decl., ¶ 18 and Ex. 13.) The specimen of the mark applied for shows the same Lá Bồ Đề and branch with leaves as the mark that is now the subject of the '762 Registration. (*Id.* at Ex. 13 p. 72.) TTM's present counsel of record represented Binh Tay in its application. (*Id.*at p. 68) Consistent with the representation in its 2012 trial brief in the MSJ case, in this application, Binh Tay, through **Mr. Washington, included a disclaimer**, stating "No claim is made to the exclusive right to use Lá Bồ Đề apart from the mark as shown" (*Id.*, at p. 67.) In the field for "translation," counsel represented "The English translation of Lá Bồ Đềin the mark is Leaf of Buddha tree." (*Id.*) Further, in the field for "Significance of Mark," Binh Tay and Mr. Washington represented "Lá Bồ Đề appearing in the mark means or signifies or is a term of art for vegetarian in the relevant trade or industry or as applied to the goods/services listed in the application." (*Id.*) The trademark examiner refused to register the mark because of a likelihood of confusion with the mark in the '888 Registration. (*Id.* at p. 36.) In response, Binh Tay and Mr. Washington argued:

1
2
3
4
5
6
7
8
9
10

> The only mark which the applicant believes is relevant is S/N 7818404 (Registration No. 2856888) which is owned by MSJ Corp. First of all the applicant and MSJ concluded litigation over the use of Lá Bồ Đề after finding they were not competing because the applicant sells flour-based instant soups and MSJ sells soy-based condiments. In addition to the differentiation of category of product, they were found to be distinctive marks located in different sections of the markets such that there was no risk of confusion. The parties settled the matter under terms that MSJ Corp. and its principals would not object to this registration so long as it is limited to soup products and not soy or soy sauce products.

11
(*Id.* at p. 29.)

12
In responding to the Office Action, Binh Tay and Mr. Washington also

13
described the specific characteristics of the Binh Tay mark they were applying to

14
register, as shown in the copied image below taken from the file history of the '296

15
Application:

16
17
18
19
20
21
22
23
24

1.  There are some weaknesses in the initial application which we would like to address first: The mark consists of the stylized text " LÁ BÔ DÊ " and the green leaves design, normally on a yellow background. The green color of the leaves is part of the mark.  The leaves are attached to a branch sloping down from right to left, a large leaf in front, a smaller one partly covered, and two less developed "sprouting" leaves.  This mark has been used for the past 40 years in Vietnam and is popular in the USA among ethnic Vietnamese and Chinsese:

# LÁ BÔ DÊ



LÁ BÔ DÊ is Vietnamese for "The Bhudda's leaf" which is a reference to the variety of tree under which the Bhudda received enlightenment.

(*Id.* at 30.)

The mark in the MSJ '888 Registration used to reject the '296 Application—and now asserted against Sun Lee—is shown below.



(Randall Decl., Ex. 13 at pp. 37, 45.)

The examiner issued another office action, however, again refusing the registration in view of MSJ's '888 Registration, among other things, stating that further information should be presented regarding the concluded litigation and any settlement agreement. (*Id.* at p. 7 of 74.) The examiner also had questions about why the words Lá Bồ Đề are descriptive and should be disclaimed, what Binh Tay meant about the phrase being a term of art for vegetarian and whether it had descriptive significance in the industry. (*Id.* at p. 7-8.) Binh Tay did not respond to the second office action, however, and the file history shows that the application was abandoned. (*Id.*).

### 3. The Prosecution of Binh Tay's U.S. Trademark Application No. 86427451, now the '762 Registration

After the '296 application was abandoned, Binh Tay had a different attorney file a new trademark application for a slightly revised mark. (Randall Decl., Ex. 12.) As shown in the '762 Registration, the mark includes "Lá Bồ Đề," above three Chinese characters in a rounded rectangular box and four overlapping leaves. The four Bodhi leaves like in the prior '296 Application are each attached to a branch sloping down from right to left, a large leaf is in front, a slightly smaller leaf is partly covered, and two less developed "sprouting" leaves extend from the end of the

branch to the left. But in this application, unlike the abandoned '296 Application, Binh Tay did not disclaim exclusive rights in "Lá Bồ Đề" apart from the mark as shown. Nor did it disclose that the English translation, "Leaf of Buddha tree" connotes to consumers in the relevant market that a food product is vegetarian. Unlike in its abandoned '296 application, Binh Tay provided the signed Settlement and Consent to Use Agreement between itself and MSJ Foods, which was the owner of the '888 Registration. (*Id.* at pp. 59, 67-68 of 68 ("Applicant has attached a signed Settlement and Consent to Use Agreement between Applicant and MSJ Foods, Inc., who is the owner of Record of U.S. Trademark Registration No. 2,856,888.").) This time, Binh Tay's application sailed through without the examiner issuing any office action. On June 9, 2015, the mark was registered as the '762 Registration and is now asserted in this action.

## III.    ARGUMENT

### A.    Legal Standard for Motions to Dismiss

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court is not required to accept as true allegations that contradict matters properly subject to judicial notice. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Mullis v. United States Bankruptcy Ct*., 828 F.2d 1385, 1388 (9th Cir. 1987). Although courts will not normally look beyond the four corners of

the complaint in resolving a Rule 12(b)(6) motion, a court may consider material that the plaintiff properly submitted as part of the complaint. *Id.* The Court may disregard allegations of the complaint that are contradicted by attached exhibits. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987); *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998)..

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard requires more than the sheer possibility or conceivability that a defendant has acted unlawfully. *Id.* A formulaic recitation of the elements of a cause of action will not suffice. *Twombly*, 550 U.S. at 555. When "a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678.

**B.    TTM's First Through Sixth Claims for Relief Are Not Sufficiently Pled**

  **1.    TTM's Federal Trademark Infringement Claim Fails Because It Has Not Plausibly Pled Likelihood of Confusion.**

TTM has not plausibly alleged a likelihood of confusion between its marks and Sun Lee's use of Lá Bồ Đề and a leaf design on its accused products. First, Binh Tay's disclaimed "Lá Bồ Đề" apart from its mark as a whole in its abandoned '296 Application. Binh Tay and TTM's counsel, Dale Washington, disclosed in a declaration under the penalty of perjury to the USPTO in the same '296 Application, "LÁ BÔ DÊ appearing in the mark means or signifies or is a term of art for

vegetarian tradition in the relevant trade or industry or as applied to the goods/services listed in the application." (Randall Decl., Ex. 13 at 27 of 74.) This is also the only viable reason that Binh Tay's Lá Bồ Đề mark would not infringe MSJ's earlier registered Lá Bồ Đề mark in the '888 Registration and permit Binh Tay to obtain the asserted '762 Registration.  Accordingly, the Court should not consider the Lá Bồ Đề phrase or narrowly construe it with emphasis on the Bodhi leaf design and other elements of the parties' products as whole when considering likelihood of confusion. A disclaimer of rights shows that the applicant is not making claim to the exclusive appropriation of such matter except in the precise relation and association in which it appeared in the drawing and description. *See In re Franklin Press, Inc.*, 597 F.2d 270, 273 (CCPA 1979); Trademark Manual of Examination Procedure § 1213 (2024) ("TMEP") (explaining that a disclaimer's purpose is to permit registration of mark that is registrable as a whole but contains matter that would not be registrable standing alone without creating false impression of extent of registrant's right with respect to certain elements in mark). The disclaimer "shows that the applicant enjoys no exclusive right to the disclaimed [elements] apart from the composite mark." *Dena Corp. v. Belvedere Int'l,* 950 F.2d 1555, 1560 (Fed. Cir. 1991). Second, by advising the USPTO that while "Lá Bồ Đề" literally means "leaf of Buddha Tree," it is understood by consumers to mean "vegetarian" and thus suitable for Buddhists to eat, Binh Tay represented that this phrase is not used in a source-identifying way by TTM or other companies using the phrase on vegetarian food products, and is not understood that way by consumers. Confusion about a product's source "is most likely to arise when someone uses

1  another's trademark as a trademark—meaning . . . as a source identifier—rather than

2  for some other expressive function." *Jack Daniel's Props. v. VIP Prods LLC*, 599

3  U.S. 140, 157 (2023). A trademark owner cannot prevent others from using a phrase

4  in contexts that do not imply their products' sources. *LTTB, LLC v. Redbubble, Inc.*,

5  385 F. Supp. 3d 916, 919 (N.D. Cal. 2019), aff'd, 840 Fed. Appx 148 (9th Cir.

6  2021); *Cove USA LLC v. No Bad Days Enters., Inc.*, No. 8:20-cv-02314-JLS-KES,

7  2022 U.S. Dist. LEXIS 26030, at *7 (S.D. Cal. Jan. 5, 2022). When the phrase "Lá

8  Bồ Đề" is understood to simply to mean vegetarian, TTM's only argument for

9  likelihood of confusion is that Sun Lee's products use "the distinctive Lá Bồ Đề

10 together with a Bodhe Leaf or leaves" and that Sun Lee's marks "closely mimic the

11 placement and design on the same food products before the same class of

12 customers." FAC at ¶ 28. But TTM's allegations are belied by the parties' respective

13 products. Indeed, not all illustrations of leaves of the same species of tree are

14 confusingly similar. *See Kendall Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150

15 F.3d 1042, 1049 (9th Cir. 1998) (explaining differences between the distinctive

16 features of the grape leaf on the plaintiff's label and those of the grape leaf on the

17 defendant's non-infringing label). In *Kendall Jackson*, the Ninth Circuit concluded

18 that the grape leaf, once only suggestive of wines because wines are made from

19 grapes, had become generic for wine through its wide use in the wine industry. *Id.*,

20 citing McCarthy on Trademarks and Unfair Competition, § 36, at 7-62 (4th Ed. 1997)

21 ("A pictorial representation on a label may be so commonplace as to be incapable of

22 creating a separate commercial impression in a buyer's mind."). Here, the single

23 green leaf that appears on Sun Lee's accused products looks significantly different

24

1  from the cluster of leaves in the '762 Registration or the single silhouette of a leaf in

2  a fan-shaped outline in the '888 Registration. Below are pictures of goods

3  employing TTM's asserted marks (both of which the predecessors in interest

4  concluded did not create a likelihood of confusion with one another):




16    Below are photographs of Sun Lee's products from Exhibit 4:

1

2

3

4

5

6

7

8

9

10

11



12

13

14

15

16

17

18

19

20

21

22

23




24

1    The Bodhi leaf on the labels of the Sun Lee sauce products all point up and

2    other design elements obscure the leaf design, which is significantly different than

3    the single leaf of the '888 Registration or the multiple leaves of the '762

4    Registration.  Moreover, the pattern of veins on Sun Lee's leaves is simple, with no

5    branching, whereas the products sold in connection with TTM's '762 leaf design

6    have multiple leaves each having a complex, branching vein pattern, while the '888

7    mark's single leaf design does not include veins at all. The veins in Sun Lee's leaf

8    design used on its sauces also have a distinctive white appearance and point up

9    toward the heavens. The Sun Lee leaf design on its sauce labels is also surrounded

10    by a distinctive white halo representative of Buddha's enlightenment, but neither of

11    the leaf designs of the '762 or '888 Registrations has such a halo. In all four Sun Lee

12    labels, the leaf is partly obscured by a picture of a bowl, food item, or text. None of

13    the Sun Lee Bodhi leaf designs includes a stem, whereas TTM's '772 leaf design

14    has a stem sloping downward from the right to the left with four leaves attached, one

15    large leaf hanging down from the stem and partially covering a slightly smaller leaf

16    also hanging down from the stem, and two smaller "sprouting" leaves extending

17    from the stem to the left. The '888 leaf design also includes a very prominent stem

18    extending at a 45-degree angle upwards to the left. Therefore, there is no likelihood

19    of confusion just because Sun Lee's labels include a drawing of a Bodhi leaf.

20    Additionally, three of the labels show Sun Lee's federally registered "Buddha

21    Brand" logo showing a seated Buddha in a gold ring with the words "since 1982"

22    and a gold ribbon that says "BUDDHA BRAND." And the label for vegetarian

23    noodles bears a large Sun Lee brand logo and a single Chinese character. TTM's "mi

24

chay" and "pho chay" noodle labels shown in Ex. 1 include a house mark comprised of the words "Binh Tay" and three small icons in a white oval outlined in red. The same house mark appears on the film sealing the cap of the sauce bottle. (Ex. 1 at p. 7 of 16). House marks like Sun Lee's Buddha logo and TTM's oval with "Binh Tay" and three small icons help "reduce or eliminate likelihood of confusion." 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:47 (4th ed. 1997); *Aliign Activation Wear, LLC v. Lululemon Athletica Canada, Inc.*, 2022 U.S. App. LEXIS 22076, at *3, 2022 WL 3210698 (9th Cir. Aug. 9, 2022) (citing *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 842 (9th Cir. 2002)). For all these reasons, the FAC's allegations do not plausibly support a reasonable inference that consumers are likely to be confused about the source of Sun Lee's products.

**2.      TTM Fails to State Claims for Federal Unfair Competition, Common Law Trademark Infringement Or Unfair Competition Under State Law Because It Has Not Plausibly Alleged A Likelihood of Confusion.**

Section 1125(a)(1) of the Lanham Act prohibits any person from "us[ing] in commerce any word, term, name, symbol, or device, or any combination thereof, of any false designation of origin false or misleading description of fact, or false or misleading representation of fact" which is likely to cause customer confusion, deception, or mistake. This section creates a federal cause of action for trademark infringement, even if a mark is not federally registered. *Matal v. Tam*, 582 U.S. 218, 225 (2017); *Century 21 Real Est. Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988); *see also Brookfield Commc'ns, Inc. v. West Coast Ent. Corp.*, 174 F.3d 1036,

1046, n.6 (9th Cir. 1999) (a claim for false designation of origin under § 1125(a) requires proof of the same elements as a claim for trademark infringement). The elements of claims for common law trademark infringement and for unfair competition under California's Bus. & Prof. Code § 17200 are the same as those for violation of 15 U.S.C. § 1125(a). *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008); *Reardon LLC v. Reardon Commerce, Inc.*, 683 F. 3d 1190, 1202 (9th Cir. 2012).[2] Thus, for the same reason that TTM's trademark infringement claim under § 1114 does not state a claim for failing to plausibly allege the accused Sun Lee products create a likelihood of confusion with the Bodhi leaf designs reflected in the '762 and '888 Registrations and their corresponding commercial products, TTM's claims under § 1125(a), common law trademark infringement and unfair competition, and unfair competition under Cal. Bus. & Prof. Code. § 17200 must also fail, as likelihood of confusion is an essential element each of those causes of action. Moreover, if consumers understand Lá Bồ Đề to mean that a product is vegetarian and fit for Buddhists, they cannot also understand it to identify TTM as the single source of a specific product. Just as many food products, even those in direct competition, include descriptions of qualities of the food such as "kosher," "halal," or "dolphin safe" that do not function as trademarks, Lá Bồ Đề simply describes an aspect of the products *other* than who makes it.

---

[2] In its Fourth Claim for Relief, TTM cites twelve separate statutes in addition to Cal. Bus. & Prof. Code § 17200 without alleging any facts or elements of the listed statutes. Merely citing a statute is not plausibly pleading a cause of action under the statute.

Further, "fair use" provides an affirmative defense to federal trademark claims. 15 U.S.C. §§ 1115(b)(4), 1125(c)(3)(A). Fair use may be considered in deciding a motion to dismiss when no material facts are in dispute. *Leadsinger, Inc., v. BMG Music Pub'g.*, 512 F. 3d 522, 530 (9th Cir. 2008). In the classic or descriptive fair use defense (as opposed to nominative fair use), a defendant must show (1) it is not using the term as a trademark or service mark; (2) it is using the term "fairly and in good faith;" and (3) it is using the term only to describe its goods or services. *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1150-51 (9th Cir. 2002) (citing 15 U.S.C. § 1115(b)); *see also* 15 U.S.C. § 1125(c)(3)(A) (enumerating a defense for a "descriptive fair use"). Here, the Court can properly conclude that Sun Lee's use of the phrase "LA BO DE" and a bodhi leaf design on its labels along with its own Buddha Brand logo or other design elements constitutes fair use or is not even a source-identifying use in the first place. TTM's Second, Fourth, and Fifth Claims must be dismissed.

**3.    TTM Fails to State a Claim for Dilution Under State Or Federal Law Because It Has Not Plausibly Alleged That It Has Rights In a Famous Mark.**

In a trademark dilution claim, the key inquiry is whether the defendant's use is likely to dilute the plaintiff's "famous and distinctive" mark. *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, 633 F.3d 1158, 1169 (9th Cir. 2011). The analysis of dilution claims is the same under both federal and state law. *Jada Toys,* 518 F.3d at 634; *Arcsoft, Inc. v. Cyberlink Corp.*, 153 F. Supp. 3d 1057, 1065 (N.D. Cal. 2015). To prevail on a dilution claim, "a plaintiff must show that (1) the mark is

famous and distinctive; (2) the defendant is making use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark is likely to cause dilution by blurring or dilution by tarnishment." *Id*. A mark qualifies as famous for the purposes of a dilution claim "if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2). "Niche" fame, such as within a specialized market segment, is not sufficient. *Blumenthal Distrib., Inc. v. Herman Miller, Inc*., 963 F.3d 859, 870 (9th Cir. 2020). To be famous, a mark must be more than just distinctive. *ACI, Inc. v. Addidas-Salomon, AG*, 359 F. Supp. 2d 918, 922 (C.D. Cal. 2005). Trademark dilution claims are reserved for only the most select class of marks. *Perfumebay.com v. eBay, Inc.*, 506 F.3d 1165, 1179-80 (9th Cir. 2007). "The mark must have acquired the requisite level of fame by the time 'the defendant first began to use the mark in commerce.'" *Arcsoft*, 153 F. Supp. 3d at 1065 (quoting *Pinterest, Inc. v. Pintrips, Inc.*, 140 F. Supp. 3d 997, 1031 (N.D. Cal. 2015)). "In determining whether a mark possesses the requisite degree of recognition, the court may consider all relevant factors, including the following: (i) [t]he duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties; (ii) [t]he amount, volume, and geographic extent of sales of goods or services offered under the mark; (iii) [t]he extent of actual recognition of the mark; and (iv) [w]hether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register." 15 U.S.C. § 1125(c)(2)(A)(i)-(iv). "Applying these provisions, the Ninth Circuit has concluded that trademark dilution

'is the cause of action reserved for a select class of marks—those marks with such powerful consumer associations that even noncompeting uses can impinge on their value.'" *Arcsoft*, 153 F. Supp. 3d at 1065 (quoting *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1011 (9th Cir. 2004)). "[D]ilution protection [extends] only to those whose mark is a household name." *Id.* (internal quotation marks omitted).

Here, TTM has not plausibly alleged that it owns a mark in that select class of marks. Indeed, Binh Tay (and Mr. Washington) told this Court in 2011 that MSJ only sold $5,000 annually under the '888 Registration and Binh Tay sold approximately $100,000 annually under the '762 Registration. (Randall Decl., Ex. 9 at 4 of 9, lns. 5–8.) These are not the kinds of sales that would justify fame in even a niche market, much less sufficient to create a household name sufficient to state a claim for dilution. Accordingly, TTM has not and cannot plausibly plead a claim for dilution and TTM's third claim for of relief for federal dilution and its sixth claim for relief for dilution under thirty-five different state statues must be dismissed with prejudice.

## IV.    CONCLUSION

Several allegations of material fact in the Complaint are contradicted by its own exhibits or by government records maintained by the USPTO or United States Courts that are subject to judicial notice, and therefore do not have to be presumed to be true. Taking TTM's remaining allegations as true for purposes of this motion, TTM fails to plausibly allege any of its claims for relief. For these reasons, the

1  motion should be granted.  Moreover, because amendment would be futile, leave to

2  amend should be denied.

3

4    DATED:  November 8, 2024        ORBIT IP, LLP

5                                    By:  /s/ David A. Randall
                                     David A. Randall (CA SBN 156722)
6                                    Ehab Samuel (SBN 228296)
                                     Paul G. Novak (SBN 261388)
7

8                                    *Attorneys for Defendant*
                                     SUN LEE, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

## <u>Certification of Compliance with C.D. Cal. L.R. 11-6.2</u>

The undersigned, counsel of record for Defendant Sun Lee, Inc., certifies that this brief contains 5,844 words, which complies with the word limit of L.R. 11-6.1.

October November 8, 2024

/s/ David A. Randall
David A. Randall

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
FIRST AMENDED COMPLAINT
Case No. 2:24-cv-06846-JWH-AJR